**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Joseph T. Corradi** | ) | **CASE NO. _____** |
| **6775 Fox Crossing Court** | ) | |
| **Austintown, Ohio 44515** | ) | **JUDGE _____** |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **COMPLAINT** |
| **Lane Funeral Homes, Inc.** | ) | |
| **dba Lane Family Funeral Homes** | ) | |
| **1350 N. Niles-Canfield Rd.** | ) | |
| **Mineral Ridge, Ohio 44440** | ) | |
| | ) | |
| **Defendant.** | ) | |

Plaintiff, Joseph T. Corradi, by his undersigned counsel and for his several causes of action and claims for relief against Defendant, Lane Funeral Homes, Inc. dba Lane Family Funeral Homes avers, as of all times pertinent, the following matters and things.

### Count I (Disability Discrimination)

1. Plaintiff, at all times relevant hereto, was a resident of Ohio and resided at the above captioned address.

2. At all times relevant hereto Plaintiff was and is funeral director licensed by the State of Ohio. He has been licensed since 1991.

3. Plaintiff was employed by Defendant as a funeral director from February 2013 until December 2015.

4. Defendant, Lane Funeral Homes, Inc. dba Lane Family Funeral Homes was at all times relevant hereto and currently is an Ohio corporation with offices at the above

captioned address. Defendant operates some eight funeral homes and a crematory in and around Mahoning County and Trumbull County Ohio.

5. Venue is proper in this Court is proper as the actions that give rise to Plaintiff's cause of action arose in the Northern District of Ohio.

6. Defendant was and is an employer within the meaning of the federal Americans with Disabilities Act of 1990, as amended ("ADA"), Title 42, U.S. Code, Sections 12101-12117, as well as of the provisions of the CFR promulgated by the EEOC under the ADA.

7. In 2010 Plaintiff was diagnosed with a disabling medical condition. Plaintiff's medical condition constitutes a covered disability under the ADA.

8. At all times relevant hereto Plaintiff was and is suffering from medical condition and Defendant knew about Plaintiff's medical condition.

9. At all times relevant hereto Plaintiff could perform the essential functions of his employment with or without accommodation.

10. At all relevant times, Plaintiff performed his job safely and satisfactorily and all assertions to the contrary are false.

11. At the time Plaintiff was hired by Defendant, he requested a reasonable accommodation on account of a disability. On account of his disabling condition he requested that he not be required to embalm bodies that had been subject to an autopsy or donated bodies because of the excess fumes which exacerbate his disability.

12. Joe D. Lane, the owner of Defendant and Bill Forsberg, the Chief Operating Officer of Defendant, granted the accommodation and Plaintiff was not required to perform the procedures mentioned above. He did embalm "normal" bodies.

13. In or about August 2014 Plaintiff was assigned to Defendant's Austintown Chapel as the Primary Care Arranger. Defendant continued to afford him the accommodation.

14. After Plaintiff was assigned to the Austintown Chapel, Defendant assigned Mark Latimer as the Austintown Chapel Manager. Mr. Latimer began complaining to Plaintiff that he was not performing one hundred percent of his job duties. At the time Plaintiff had the highest sales and "zero" balance for accounts receivable. He was performing as he had been prior to Mr. Latimer arriving at the Austintown Chapel.

15. After Mr. Latimer was assigned to the Austintown and Mineral Ridge Chapels, Suzanne Vekasy, Mr. Latimer's administrative assistant, began to complain to other employees that Plaintiff did not engage in embalming. Her complaints were false, as Plaintiff did perform embalming services, depending upon whether time permitted due to his other job duties. Prior to Mr. Latimer's arrival Plaintiff had never been counselled about not embalming.

16. On November 27, 2015 Mr. Latimer informed Plaintiff that he needed to speak to Plaintiff's medical provider about Plaintiff using a device so he could embalm bodies that had been subject to an autopsy and or had been donated. Plaintiff informed Mr. Latimer that OSHA regulations did not permit a person with his disabling condition to use the device he recommended. Plaintiff informed Mr. Latimer that he had been afforded the reasonable accommodation on account of his disability. Mr. Latimer stated that he would investigate further, but as far as he was concerned Plaintiff was not performing one hundred percent of his assigned job duties.

17. Mr. Latimer openly discussed Plaintiff's disability with other employees.

18. During the short period of time Mr. Latimer was at the Austintown Chapel, he repeatedly engaged in conduct that Plaintiff reasonably believed was discriminatory and retaliatory toward him and was meant to compel Plaintiff to resign.

19. On December 2, 2015 Ms. Vekasy mentioned to Nicole Evanofsksy, a coworker and a funeral director, that Plaintiff was demoted from his manager position at the Cortland, Ohio Chapel before being assigned to the Austintown, Ohio Chapel. This was not true.

20. On December 3, 2015 Plaintiff called Defendant's owner Joe Lane's office and requested a meeting with Mr. Lane to discuss the conduct Plaintiff was being subjected to at the hands of Mr. Latimer. Plaintiff had called Mr. Lane's office several days before, but did not receive a return call from Mr. Lane. Plaintiff informed Mr. Lane's secretary that he wanted to discuss how Mr. Latimer was treating him in the workplace.

21. On December 3, 2015 Plaintiff was called to the Lane Administration Building for a meeting with Joe Lane. When he arrived for the meeting, Joe Lane, Carol Ferko, HR Manager, Todd Angood, Accounting Department. and David Knarr, IT manager, were present for the meeting. Plaintiff expressed his concerns including Mr. Latimer's unwelcome comments about his medical condition and his challenging the accommodation Plaintiff had been afforded. He explained to them that he did not want to endure the discriminatory conduct of Mr. Latimer. Plaintiff also discussed the unwelcome religious based comments Mr. Latimer made about Plaintiff's Catholic faith.

22. The attendees listened but did not respond to any his specific allegations. Rather, Ms. Ferko chastised Plaintiff for leaving a detailed message for Mr. Lane in which he

4

addressed how he was being treated by Mr. Latimer. She stated it was a "big mistake, a very big mistake".

23. Ms. Ferko chastised Plaintiff for leaving a detailed message for Mr. Lane in which he addressed how he was being treated by Mr. Latimer. She stated it was a "big mistake, a very big mistake".

24. Mr. Lane, Ms. Ferko, Mr. Angood and Mr. Knarr then left the room for approximately 10 minutes. They returned and informed Plaintiff that it was best that he part ways with Defendant because he was not happy with his employment and that he was no longer a good fit with the organization. Plaintiff was terminated. Plaintiff was escorted to the Austintown Chapel to retrieve his personal belongings

25. Prior to Mr. Latimer being employed by Defendant, Plaintiff was not made aware of any issues with his performance at the Austintown Chapel. He was afforded an accommodation on account of his disability. No one had mentioned his Catholic faith and its alleged impact on his work. It was only after Mr. Latimer began to comment about the accommodation Plaintiff had been afforded and the Catholic Church that Plaintiff was subjected to discrimination and retaliation for having engaged in activity protected under state and federal anti-discrimination laws.

26. At all relevant times, Plaintiff was disabled, within the meaning of the ADA, and Defendant perceived and/or regarded Plaintiff as having a disabling condition; and said condition and/or perception that he had a disabling condition constitutes a covered "disability" within the meaning of the ADA.

27. At all relevant times, Defendant knew Plaintiff was disabled, within the meaning of the ADA, and Defendant perceived and/or regarded Plaintiff as having a disabling

5

condition; and said condition and/or perception that he had a disabling condition constitutes a covered "disability" within the meaning of the ADA.

28. The stated basis for Plaintiff's termination is pretextual and constitutes an adverse job action on account of Plaintiff's disability.

29. Plaintiff filed a timely charge of discrimination alleging, *inter alia,* disability discrimination with the Equal Employment Opportunity Commission ("EEOC"); a true copy of said charge is attached hereto, and incorporated herein by reference, as Plaintiff's Exhibit A ("PXA").

30. The EEOC conducted an investigation and was unable to conclude that the information obtained establishes violations of statutes and issued a Notice of Rights on March 23, 2013; a true copy of said Notice of Rights is attached hereto, and incorporated by reference herein, as Plaintiff's Exhibit B ("PXB").

31. Plaintiff has satisfied all conditions precedent to this Court's exercise of jurisdiction over claims under the ADA.

32. By reason of Defendants' foregoing acts and omissions of disability discrimination under the ADA Plaintiff has been damaged in said sums of Back and Front Pay and Compensatory and Punitive Damages, plus reasonable attorneys' and experts' fees and costs.

### Count II (ADA – Retaliation)

33. Plaintiff restates the allegations contained in foregoing paragraphs of this Complaint as if fully restated herein.

34. Defendants were and are an employer within the meaning of the ADA.

35. The ADA, and in particular 42 USC 12203 of the ADA, *inter alia*, proscribes employers from discrimination against any individual who has opposed any act or practice unlawful under the ADA.

36. Defendants engaged in a pattern and practice of retaliatory conduct toward Plaintiff after he engaged in the aforementioned protected activity in the form of pretextual failure to afford Plaintiff continued reasonable accommodations he had been afforded, denial of requests for additional reasonable accommodations and denial of the opportunity to apply for other positions with Defendant.

37. In or about August 2014 Plaintiff was assigned to Defendant's Austintown Chapel as the Primary Care Arranger. Defendant continued to afford him the accommodation.

38. After Plaintiff was assigned to the Austintown Chapel, Defendant assigned Mark Latimer as the Austintown Chapel Manager. Mr. Latimer began complaining to Plaintiff that he was not performing one hundred percent of his job duties. At the time Plaintiff had the highest sales and "zero" balance for accounts receivable. He was performing as he had been prior to Mr. Latimer arriving at the Austintown Chapel.

39. After Mr. Latimer was assigned to the Austintown and Mineral Ridge Chapels, Suzanne Vekasy, Mr. Latimer's administrative assistant, began to complain to other employees that Plaintiff did not engage in embalming. Her complaints were false, as Plaintiff did perform embalming services, depending upon whether time permitted due to his other job duties. Prior to Mr. Latimer's arrival Plaintiff had never been counselled about not embalming.

40. On November 27, 2015 Mr. Latimer informed Plaintiff that he needed to speak to Plaintiff's medical provider about Plaintiff using a device so he could embalm bodies

that had been subject to an autopsy and or had been donated. Plaintiff informed Mr. Latimer that OSHA regulations did not permit a person with his disabling condition to use the device he recommended. This statement constitutes activity protected under the ADA.

41. Plaintiff informed Mr. Latimer that he had been afforded the reasonable accommodation on account of his disability. Mr. Latimer stated that he would investigate further, but as far as he was concerned Plaintiff was not performing one hundred percent of his assigned job duties.

42. Mr. Latimer openly discussed Plaintiff's disability with other employees.

43. During the short period of time Mr. Latimer was at the Austintown Chapel, he repeatedly engaged in conduct that Plaintiff reasonably believed was discriminatory and retaliatory toward him and was meant to compel Plaintiff to resign.

44. On December 2, 2015 Ms. Vekasy mentioned to Nicole Evanofsksy, a coworker and a funeral director, that Plaintiff was demoted from his manager position at the Cortland, Ohio Chapel before being assigned to the Austintown, Ohio Chapel. This was not true.

45. On December 3, 2015 Plaintiff called Defendant's owner Joe Lane's office and requested a meeting with Mr. Lane to discuss the conduct Plaintiff was being subjected to at the hands of Mr. Latimer. Plaintiff had called Mr. Lane's office several days before, but did not receive a return call from Mr. Lane. Plaintiff informed Mr. Lane's secretary that he wanted to discuss how Mr. Latimer was treating him in the workplace. Plaintiff's actions constitute activity protected under the ADA.

46. On December 3, 2015 Plaintiff was called to the Lane Administration Building for a meeting with Joe Lane. When he arrived for the meeting, Joe Lane, Carol Ferko, HR

Manager, Todd Angood, Accounting Department. and David Knarr, IT manager, were present for the meeting. Plaintiff expressed his concerns including Mr. Latimer's unwelcome comments about his medical condition and his challenging the accommodation Plaintiff had been afforded. He explained to them that he did not want to endure the discriminatory conduct of Mr. Latimer. Plaintiff also discussed the unwelcome religious based comments Mr. Latimer made about Plaintiff's Catholic faith. Plaintiff's actions constitute activity protected under the ADA.

47. The attendees listened but did not respond to any his specific allegations. Rather, Ms. Ferko chastised Plaintiff for leaving a detailed message for Mr. Lane in which he addressed how he was being treated by Mr. Latimer. She stated it was a "big mistake, a very big mistake".

48. Mr. Lane, Ms. Ferko, Mr. Angood and Mr. Knarr then left the room for approximately 10 minutes. They returned and informed Plaintiff that it was best that he part ways with Defendant because he was not happy with his employment and that he was no longer a good fit with the organization. Plaintiff was terminated. Plaintiff was escorted to the Austintown Chapel to retrieve his personal belongings

49. Prior to Mr. Latimer being employed by Defendant, Plaintiff was not made aware of any issues with his performance at the Austintown Chapel. He was afforded an accommodation on account of his disability. No one had mentioned his Catholic faith and its alleged impact on his work. It was only after Mr. Latimer began to comment about the accommodation Plaintiff had been afforded and the Catholic Church that Plaintiff was subjected to discrimination and retaliation for having engaged in activity protected under state and federal anti-discrimination laws.

50. The stated basis for Plaintiff's termination is pretextual and constitutes an adverse job action on account of Plaintiff's engagement in activity protected under the ADA.

51. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia,* retaliation for having engaged in activity protected under the ADA in the form of requests for reasonable accommodations; a true copy of said charge is attached hereto, and incorporated herein by reference, as Plaintiff's Exhibit A ("PXA").

52. The EEOC conducted an investigation and was unable to conclude that the information obtained establishes violations of statutes and issued a Notice of Rights on June 26, 2013; a true copy of said Notice of Rights is attached hereto, and incorporated by reference herein, as Plaintiff's Exhibit B ("PXB").

53. Plaintiff has satisfied all conditions precedent to this Court's exercise of jurisdiction over claims under the ADA.

54. This Court has jurisdiction by virtue of the ADA.

55. Venue is proper by virtue of 28 U.S.C. §1391.

56. By reason of the foregoing acts and omissions of retaliatory conduct by Defendants in violation of the ADA, Plaintiff has been damaged in said sums of Back and Front Pay and Compensatory and Punitive Damages, plus reasonable attorneys' and experts' fees and costs under 42 U.S.C. §1988.

### Count III (Title VII Religious Discrimination)

57. Plaintiff restates the allegations contained in foregoing paragraphs of this Complaint as if fully restated herein.

58. Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, *et seq.* ("Title VII").

59. At all times relevant hereto, Defendants employed and/or employ more than 15 employees so as to be covered by and subject to Title VII.

60. This Court has jurisdiction over Plaintiff's Title VII religious based discrimination claim by virtue of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, *et seq.*

61. Venue is proper in this Court is proper as the actions that give rise to Plaintiff's cause of action arose in the Northern District of Ohio.

62. In or about August 2014 Plaintiff was assigned to Defendant's Austintown Chapel as the Primary Care Arranger. Defendant continued to afford him the accommodation.

63. After Plaintiff was assigned to the Austintown Chapel, Defendant assigned Mark Latimer as the Austintown Chapel Manager. Mr. Latimer began complaining to Plaintiff that he was not performing one hundred percent of his job duties. At the time Plaintiff had the highest sales and "zero" balance for accounts receivable. He was performing as he had been prior to Mr. Latimer arriving at the Austintown Chapel.

64. After Mr. Latimer was assigned to the Austintown and Mineral Ridge Chapels, Suzanne Vekasy, Mr. Latimer's administrative assistant, began to complain to other employees that Plaintiff did not engage in embalming. Her complaints were false, as Plaintiff did perform embalming services, depending upon whether time permitted due to his other job duties. Prior to Mr. Latimer's arrival Plaintiff had never been counselled about not embalming.

65. On November 27, 2015 Mr. Latimer informed Plaintiff that he needed to speak to Plaintiff's medical provider about Plaintiff using a device so he could embalm bodies that had been subject to an autopsy and or had been donated. Plaintiff informed Mr. Latimer that OSHA regulations did not permit a person with his disabling condition to use the device he recommended. This statement constitutes activity protected under the ADA.

66. Plaintiff informed Mr. Latimer that he had been afforded the reasonable accommodation on account of his disability. Mr. Latimer stated that he would investigate further, but as far as he was concerned Plaintiff was not performing one hundred percent of his assigned job duties.

67. Mr. Latimer openly discussed Plaintiff's disability with other employees.

68. During the short period of time Mr. Latimer was at the Austintown Chapel, he repeatedly engaged in conduct that Plaintiff reasonably believed was discriminatory and retaliatory toward him and was meant to compel Plaintiff to resign.

69. Plaintiff is a practicing member of the Roman Catholic Church. At all relevant times, Defendant knew or had reason to believe that Plaintiff was a practicing Roman Catholic.

70. On November 12, 2015 Mr. Latimer questioned Plaintiff about Defendant's policy regarding not paying clergy. Plaintiff informed him it was Todd Angood's idea and that Plaintiff complied with the policy. Plaintiff informed him that there are certain Catholic Churches that Defendant may need to pay and that St. Joe's in Austintown was one of them. Mr. Latimer stated what right does the Catholic Church have to tell Defendant how to run its business? Plaintiff responded that Mr. Angood had had a

problem with a particular priest. Mr. Latimer stated he would speak with the priest and Mr. Angood about the policy.

71. On November 18, 2015 Mr. Latimer discussed moving Plaintiff to the Warren Chapel and other additional duties. He mentioned that Plaintiff's Italian Catholic ways were not a good fit at the Austintown Chapel.

72. On December 2, 2015 learned that Ms. Vekasy mentioned to Nicole Evanofsksy, a coworker and a funeral director, that Plaintiff was demoted from his manager position at the Cortland, Ohio Chapel before being assigned to the Austintown, Ohio Chapel. This was not true.

73. On December 3, 2015 Plaintiff called Defendant's owner Joe Lane's office and requested a meeting with Mr. Lane to discuss the conduct Plaintiff was being subjected to at the hands of Mr. Latimer. Plaintiff had called Mr. Lane's office several days before, but did not receive a return call from Mr. Lane. Plaintiff informed Mr. Lane's secretary that he wanted to discuss how Mr. Latimer was treating him in the workplace. Plaintiff's actions constitute activity protected under the ADA.

74. On December 3, 2015 Plaintiff was called to the Lane Administration Building for a meeting with Joe Lane. When he arrived for the meeting, Joe Lane, Carol Ferko, HR Manager, Todd Angood, Accounting Department. and David Knarr, IT manager, were present for the meeting. Plaintiff expressed his concerns including Mr. Latimer's unwelcome comments about his medical condition and his challenging the accommodation Plaintiff had been afforded. He explained to them that he did not want to endure the discriminatory conduct of Mr. Latimer. Plaintiff also discussed the

unwelcome religious based comments Mr. Latimer made about Plaintiff's Catholic faith. Plaintiff's actions constitute activity protected under the ADA.

75. The attendees listened but did not respond to any his specific allegations. Rather, Ms. Ferko chastised Plaintiff for leaving a detailed message for Mr. Lane in which he addressed how he was being treated by Mr. Latimer. She stated it was a "big mistake, a very big mistake".

76. Mr. Lane, Ms. Ferko, Mr. Angood and Mr. Knarr then left the room for approximately 10 minutes. They returned and informed Plaintiff that it was best that he part ways with Defendant because he was not happy with his employment and that he was no longer a good fit with the organization. Plaintiff was terminated. Plaintiff was escorted to the Austintown Chapel to retrieve his personal belongings

77. Prior to Mr. Latimer being employed by Defendant, Plaintiff was not made aware of any issues with his performance at the Austintown Chapel. He was afforded an accommodation on account of his disability. No one had mentioned his Catholic faith and its alleged impact on his work. It was only after Mr. Latimer began to comment about the accommodation Plaintiff had been afforded and the Catholic Church that Plaintiff was subjected to discrimination and retaliation for having engaged in activity protected under state and federal anti-discrimination laws.

78. The stated basis for Plaintiff's termination is pretextual and constitutes an adverse job action on account of Plaintiff's religious beliefs.

79. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia,* retaliation for having engaged in activity protected under the ADA in the form of requests for reasonable

accommodations; a true copy of said charge is attached hereto, and incorporated herein by reference, as Plaintiff's Exhibit A ("PXA").

80. The EEOC conducted an investigation and was unable to conclude that the information obtained establishes violations of statutes and issued a Notice of Rights on June 26, 2013; a true copy of said Notice of Rights is attached hereto, and incorporated by reference herein, as Plaintiff's Exhibit B ("PXB").

81. Plaintiff has satisfied all conditions precedent to this Court's exercise of jurisdiction over claims under the Title VII.

82. This Court has jurisdiction by virtue of Title VII.

83. Venue is proper in this Court is proper as the actions that give rise to Plaintiff's cause of action arose in the Northern District of Ohio.

84. By reason of the foregoing acts and omissions of religious discrimination by Defendant in violation of Title VII, Plaintiff has been damaged in said sums of Back and Front Pay and Compensatory and Punitive Damages, plus reasonable attorneys' and experts' fees and costs under 42 U.S.C. §1988.

**County IV (Title VII Retaliation)**

85. Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, et seq. ("Title VII").

86. At all times relevant hereto, Defendants employed and/or employ more than 15 employees so as to be covered by and subject to Title VII.

87. This Court has jurisdiction over Plaintiff's Title VII religious based discrimination claim by virtue of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, et seq.

88. This Court has jurisdiction over Ms. Kreuzer's Title VII retaliation claims by virtue of 42 U.S.C. 42 U.S.C. §2000e-3.

89. Venue is proper in this Court is proper as the actions that give rise to Plaintiff's cause of action arose in the Northern District of Ohio.

90. In or about August 2014 Plaintiff was assigned to Defendant's Austintown Chapel as the Primary Care Arranger. Defendant continued to afford him the accommodation.

91. After Plaintiff was assigned to the Austintown Chapel, Defendant assigned Mark Latimer as the Austintown Chapel Manager. Mr. Latimer began complaining to Plaintiff that he was not performing one hundred percent of his job duties. At the time Plaintiff had the highest sales and "zero" balance for accounts receivable. He was performing as he had been prior to Mr. Latimer arriving at the Austintown Chapel.

92. After Mr. Latimer was assigned to the Austintown and Mineral Ridge Chapels, Suzanne Vekasy, Mr. Latimer's administrative assistant, began to complain to other employees that Plaintiff did not engage in embalming. Her complaints were false, as Plaintiff did perform embalming services, depending upon whether time permitted due to his other job duties. Prior to Mr. Latimer's arrival Plaintiff had never been counselled about not embalming.

93. On November 27, 2015 Mr. Latimer informed Plaintiff that he needed to speak to Plaintiff's medical provider about Plaintiff using a device so he could embalm bodies that had been subject to an autopsy and or had been donated. Plaintiff informed Mr. Latimer that OSHA regulations did not permit a person with his disabling condition to use the device he recommended. This statement constitutes activity protected under the ADA.

16

94. Plaintiff informed Mr. Latimer that he had been afforded the reasonable accommodation on account of his disability. Mr. Latimer stated that he would investigate further, but as far as he was concerned Plaintiff was not performing one hundred percent of his assigned job duties.

95. Mr. Latimer openly discussed Plaintiff's disability with other employees.

96. During the short period of time Mr. Latimer was at the Austintown Chapel, he repeatedly engaged in conduct that Plaintiff reasonably believed was discriminatory and retaliatory toward him and was meant to compel Plaintiff to resign.

97. Plaintiff is a practicing member of the Roman Catholic Church. At all relevant times, Defendant knew or had reason to believe that Plaintiff was a practicing Roman Catholic.

98. On November 12, 2015 Mr. Latimer questioned Plaintiff about Defendant's policy regarding not paying clergy. Plaintiff informed him it was Todd Angood's idea and that Plaintiff complied with the policy. Plaintiff informed him that there are certain Catholic Churches that Defendant may need to pay and that St. Joe's in Austintown was one of them. Mr. Latimer stated what right does the Catholic Church have to tell Defendant how to run its business? Plaintiff responded that Mr. Angood had had a problem with a particular priest. Mr. Latimer stated he would speak with the priest and Mr. Angood about the policy.

99. On November 18, 2015 Mr. Latimer discussed moving Plaintiff to the Warren Chapel and other additional duties. He mentioned that Plaintiff's Italian Catholic ways were not a good fit at the Austintown Chapel.

17

100.     On December 2, 2015 learned that Ms. Vekasy mentioned to Nicole Evanofsksy, a coworker and a funeral director, that Plaintiff was demoted from his manager position at the Cortland, Ohio Chapel before being assigned to the Austintown, Ohio Chapel. This was not true.

101.     On December 3, 2015 Plaintiff called Defendant's owner Joe Lane's office and requested a meeting with Mr. Lane to discuss the conduct Plaintiff was being subjected to at the hands of Mr. Latimer. Plaintiff had called Mr. Lane's office several days before, but did not receive a return call from Mr. Lane. Plaintiff informed Mr. Lane's secretary that he wanted to discuss how Mr. Latimer was treating him in the workplace. Plaintiff's actions constitute activity protected under the ADA.

102.     On December 3, 2015 Plaintiff was called to the Lane Administration Building for a meeting with Joe Lane. When he arrived for the meeting, Joe Lane, Carol Ferko, HR Manager, Todd Angood, Accounting Department. and David Knarr, IT manager, were present for the meeting. Plaintiff expressed his concerns including Mr. Latimer's unwelcome comments about his medical condition and his challenging the accommodation Plaintiff had been afforded. He explained to them that he did not want to endure the discriminatory conduct of Mr. Latimer. Plaintiff also discussed the unwelcome religious based comments Mr. Latimer made about Plaintiff's Catholic faith. Plaintiff's complaints about religious discrimination constitute activity protected under the Title VII.

103.     The attendees listened but did not respond to any his specific allegations. Rather, Ms. Ferko chastised Plaintiff for leaving a detailed message for Mr. Lane in which he

addressed how he was being treated by Mr. Latimer. She stated it was a "big mistake, a very big mistake".

104.    Mr. Lane, Ms. Ferko, Mr. Angood and Mr. Knarr then left the room for approximately 10 minutes. They returned and informed Plaintiff that it was best that he part ways with Defendant because he was not happy with his employment and that he was no longer a good fit with the organization. Plaintiff was terminated. Plaintiff was escorted to the Austintown Chapel to retrieve his personal belongings

105.    Prior to Mr. Latimer being employed by Defendant, Plaintiff was not made aware of any issues with his performance at the Austintown Chapel. He was afforded an accommodation on account of his disability. No one had mentioned his Catholic faith and its alleged impact on his work. It was only after Mr. Latimer began to comment about the accommodation Plaintiff had been afforded and the Catholic Church that Plaintiff was subjected to discrimination and retaliation for having engaged in activity protected under state and federal anti-discrimination laws.

106.    The stated basis for Plaintiff's termination is pretextual and constitutes an adverse job action on account of Plaintiff's engagement is activity protected under Title VII.

107.    Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging, inter alia, retaliation for having engaged in activity protected under the ADA in the form of requests for reasonable accommodations; a true copy of said charge is attached hereto, and incorporated herein by reference, as Plaintiff's Exhibit A ("PXA").

108.    The EEOC conducted an investigation and was unable to conclude that the information obtained establishes violations of statutes and issued a Notice of Rights on

June 26, 2013; a true copy of said Notice of Rights is attached hereto, and incorporated by reference herein, as Plaintiff's Exhibit B ("PXB").

109.    Plaintiff has satisfied all conditions precedent to this Court's exercise of jurisdiction over claims under the Title VII.

110.    This Court has jurisdiction by virtue of Title VII.

111.    Venue is proper in this Court is proper as the actions that give rise to Plaintiff's cause of action arose in the Northern District of Ohio.

112.    By reason of the foregoing acts and omissions of retaliatory conduct by Defendants in violation of Title VII, Plaintiff has been damaged in said sums of Back and Front Pay and Compensatory and Punitive Damages, plus reasonable attorneys' and experts' fees and costs under 42 U.S.C. §1988.

### Count V (State Law Disability Discrimination)

113.    Plaintiff restates the allegations contained in foregoing paragraphs of this Complaint as if fully restated herein.

114.    Defendant is an employer within the meaning of the Ohio Civil Rights Act (the "OCRA"), Chapter 4112, Ohio Revised Code ("R.C."), and specifically as provided in R.C. 4112.01(A)(2) of the OCRA.

115.    At all relevant times, Plaintiff was disabled, within the meaning of the OCRA and/or Defendants perceived and/or regarded Plaintiff as having a disabling condition; and said condition and/or perception constitutes a covered "disability" within the meaning of R.C. 4112.01, *et seq.*

116.    At all relevant times, Defendant knew Plaintiff was disabled, within the meaning of the OCRA and/or Defendants perceived and/or regarded Plaintiff as having a

disabling condition; and said condition and/or perception constitutes a covered "disability" within the meaning of R.C. 4112.01, *et seq.*

117.     The stated basis for Plaintiff's termination is pretextual and constitutes an adverse job action on account of Plaintiff's disability.

118.     By reason of the foregoing acts and omissions of discriminatory conduct by Defendant in violation of the OCRA, Plaintiff has been damaged in said sums of Back and Front Pay and Compensatory and Punitive Damages.

## Count VI (State Law Religious Discrimination)

119.     Plaintiff restates the allegations contained in foregoing paragraphs of this Complaint as if fully restated herein.

120.     Defendant is an employer within the meaning of the Ohio Civil Rights Act (the "OCRA"), Chapter 4112, Ohio Revised Code ("R.C."), and specifically as provided in R.C. 4112.01(A)(2) of the OCRA.

121.     At all relevant times, Defendant knew or had reason to believe that Plaintiff was a practicing Roman Catholic.

122.     R.C. 4112.02 proscribes discrimination on account of an employee's religious beliefs.

123.     The stated basis for Plaintiff's termination is pretextual and constitutes an adverse job action on account of Plaintiff's religious beliefs.

124.     By reason of the foregoing acts and omissions of religious discrimination against Plaintiff on account of his religious beliefs in violation of the OCRA, Plaintiff has been damaged in said sums of Back and Front Pay and Compensatory and Punitive Damages.

**Count IV (State Law Retaliation)**

125.    Plaintiff restates the allegations contained in foregoing paragraphs of this Complaint as if fully restated herein.

126.    Defendant is an employer within the meaning of the Ohio Civil Rights Act (the "OCRA"), Chapter 4112, Ohio Revised Code ("R.C."), and specifically as provided in R.C. 4112.01(A)(2) of the OCRA.

127.    Defendant retaliated against Plaintiff on account of his engagement in the aforementioned protected activity in the form of his opposition to conduct that he reasonably believed was discrimination on account of his disability and/or his Catholic Faith. Said conduct is proscribed by R.C. 4112.02(I).

128.    The stated basis for Plaintiff's termination is pretextual and constitutes an adverse job action on account of Plaintiff's engagement in activity protected under the OCRA.

129.    By reason of the foregoing acts and omissions of retaliatory conduct by Defendant in violation of the OCRA, Plaintiff has been damaged in said sums of Back and Front Pay and Compensatory and Punitive Damages.

**WHEREFORE,** Plaintiff demands:

**A.**  Trial by jury on all Counts and issues;

**B.**  Judgment for plaintiffs and against the Defendant for said sums of: Back and Front Pay; Compensatory and/or Punitive Damages; prejudgment interest; and/or reasonable attorneys' fees and costs; and

**C.**  Such other and further relief as is just and equitable under the facts and circumstances.

Respectfully submitted,

s/ John F. Myers
John F. Myers #0032779
Attorney at Law
275 North Portage Path 3C
Akron, Ohio 44303
(330) 535-0850 (office)
(330) 819-3695 (cell)
johnmyerscolpa@gmail.com